UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 PROCEEDING |
| JELENA DORDEVIC, ) | |
| ) | |
| DEBTOR. ) | CASE NO. 20 B 9807 |
| _____ ) | |
| ) | |
| PATRICK S. LAYNG, ) | ADVERSARY NO. |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| PLAINTIFF, ) | JUDGE DONALD R. CASSLING |
| ) | |
| vs. ) | |
| ) | |
| JELENA DORDEVIC, ) | |
| ) | |
| DEFENDANT. ) | |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND FOR OTHER RELIEF**

NOW COMES Patrick S. Layng, the United States Trustee for Region 11, by his attorney, Jeffrey S. Snell, and for his Complaint Objecting to Debtor's Discharge states to the Court as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

3. Plaintiff, Patrick S. Layng, is the duly appointed United States Trustee for Region 11 under 28 U.S.C. § 581(a)(11) (hereinafter referred to as the "U.S. Trustee"). The U.S. Trustee maintains his principal place of business at 219 S. Dearborn St., Room 873, Chicago, Illinois, within this district.

4. The defendant, Jelena Dordevic (hereinafter "Defendant"), resides within this district.

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the duty to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101, *et. seq.*

6. Pursuant to 11 U.S.C. §§ 307 and 727(c)(1), the U.S. Trustee has standing to bring this complaint.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

8. The last day for the U.S. Trustee to object to Defendant's discharge has been extended to February 26, 2021.

## BACKGROUND

### I. Defendant's Bankruptcy Case

9. Defendant filed her voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on April 24, 2020 (the "Petition Date"). With her Petition, Defendant filed her Schedules A-J (hereinafter the "Schedules" collectively, and "Schedule _" individually) and Statement of Financial Affairs ("SOFA"). (Copies of Defendant's Petition, Schedules, and Statement of Financial Affairs are attached as Exhibit A.)

10. Defendant executed declarations under penalty of perjury affirming her representations within the Petition, Schedules, and SOFA.

11. Gus A. Paloian was appointed Chapter 7 Trustee (the "Chapter 7 Trustee") in Defendant's bankruptcy case.

12. In her Schedule A/B, Defendant represents, *inter alia*, that as of the Petition Date she possessed:

   a. One motor vehicle, a 2010 Mercedes (Line 3.1);

   b. No interests in any businesses (Lines 18 and 19);

   c. No claims against third parties (Line 33);

   d. No legal or equitable interest in any business-related property (Line 37);

   e. No machinery, fixtures, equipment, or supplies used in business (Line 40); and

   f. No interests in partnerships or joint ventures (Line 42).

13. In her SOFA, Defendant reported gross income of:

   a. $39,000 for 2019; and

   b. $37,600 for 2018.

14. In her SOFA, in response to Question 9 requiring Defendant to disclose all lawsuits, court actions, and administrative proceedings to which she was a party within 1 year before the bankruptcy filing, Defendant reported 6 actions.

## II. The 341 Meeting

15. Defendant appeared for her meeting of creditors pursuant to 11 U.S.C. § 341 on June 3, 2020 (the "341 Meeting").

16. At the outset of the 341 Meeting, Defendant swore an oath to tell the truth.

17. During the 341 Meeting, Defendant testified that she had reviewed her bankruptcy petition, schedules, and statements for factual accuracy before she signed them, and that they were true and correct.

18. During the 341 Meeting, Defendant testified that she had disclosed all of her assets and all of her creditors in her bankruptcy papers.

**III.     Defendant's Trucking Businesses**

19. Defendant acknowledges having held ownership interests in three operating, trucking-related businesses in years 2018 and 2019: Arrow Freight, Inc.; GTR Group Inc.; and Pro Star Auto Group LLC.

20. Defendant possessed control over Arrow Freight, Inc. throughout 2018 and 2019.

21. Defendant possessed control over GTR Group Inc. throughout 2018 and 2019.

22. Defendant possessed control over Pro Star Auto Group LLC throughout 2018 and 2019.

23. Arrow Freight Inc.'s business consisted of purchasing or leasing trucks and trailers, and then leasing or subleasing those trucks and trailers to independent owner operators.

24. Defendant testified during a Rule 2004 examination on September 3, 2020, that Arrow Freight, Inc. stopped operating in the first quarter of 2019.

25. GTR Group Inc.'s business consisted primarily of transporting automobiles.

26. Defendant testified on September 3, 2020, that she does not remember if GTR Group Inc. leased trucks from Arrow Freight Inc.

27. Defendant testified on September 3, 2020, that GTR Group, Inc. stopped operating by early 2019.

28. Pro Star Auto Group LLC's business consisted primarily of transporting automobiles.

29. Defendant testified on September 3, 2020, that Pro Star Auto Group LLC did not lease trucks from Arrow Freight Inc.

30. Defendant testified on September 3, 2020, that Pro Star Auto Group LLC stopped operating at some point in 2018, but that she couldn't remember what part of the year it was.

A. The Arrow Freight Fleet

31. When Arrow Freight, Inc. ceased doing business in the first quarter of 2019, it had more than 100 trucks and/or trailers (the trucks and trailers are hereinafter collectively referred to as the "Arrow Freight Fleet").

32. Many, if not all, of the individual trucks and trailers within the Arrow Freight Fleet were subject to security interests of lenders, or were the property of lessors who leased the equipment to Arrow Freight, Inc.

33. Defendant testified on September 3, 2020, that more than 50% of the Arrow Freight Fleet had GPS devices so that the location of the equipment could be ascertained, but that the GPS service provider, whose name she could not remember, discontinued the tracking service at the end of 2018.

34. Arrow Freight, Inc. leased equipment from within the Arrow Freight Fleet to operators on a weekly basis and failed to retain copies of the leases more than 50% of the time.

35. Defendant was responsible for retaining copies of leases on Arrow Freight Inc.'s behalf.

36. Arrow Freight Inc. did not maintain a centralized, comprehensive record of the leases for each piece of equipment within the Arrow Freight Fleet.

37. Defendant has testified that records relevant to the Arrow Freight Fleet were located in a trailer that she reported stolen in April of 2019.

38. Newtek Small Business Finance, LLC ("Newtek") is a creditor of Arrow Freight Inc. and holds security interests in, among other things, certain pieces of equipment within the Arrow Freight Fleet.

39. Defendant personally guaranteed Arrow Freight Inc.'s obligations to Newtek.

40. CIT Bank NA ("CIT") is a creditor of Arrow Freight Inc. and holds security interests in two pieces of equipment: a bobcat and a forklift.

41. Defendant personally guaranteed Arrow Freight Inc.'s obligations to CIT.

42. Siemens Financial Services, Inc ("Siemens") is a creditor of Arrow Freight Inc. and holds security interests in, among other things, certain pieces of equipment within the Arrow Freight Fleet.

43. Defendant personally guaranteed Arrow Freight Inc.'s obligations to Siemens.

44. Defendant has failed to turnover or otherwise make available to Newtek all of its collateral from within the Arrow Freight Fleet, including the following items which remain unaccounted for as of December 18, 2020:

| **Year** | **Manufacturer** | **Model** | **VIN #** |
|---|---|---|---|
| 2016 | Cottrell | Car Hauler | 5E0AU1746FG590101 |
| 2006 | Cottrell | Car Hauler | 5E0AU1746GG697201 |
| 2016 | Cottrell | Car Hauler | 5E0AU1742FG590001 |
| 2016 | Utility | Trailer | 1UYVS2539GG429719 |
| 2016 | Utility | Trailer | 1UYVS2537GG429718 |
| 2014 | Volvo | Tractor | 4V4NC9EH1EN148608 |
| 2013 | Volvo | Tractor | 4V4NC9EH8DN130735 |
| 2007 | Volvo | Tractor | 4V4NC9GH47N397646 |
| 2007 | Volvo | Tractor | 4V4NC9GH87N425352 |
| 2007 | Volvo | Tractor | 4V4NC9GH47N425347 |
| 2006 | Volvo | Tractor | 4V4NC9GH66N396819 |
| 2008 | Volvo | Tractor | 4V4NC9GHX8N460041 |
| 2008 | Volvo | Tractor | 4V4NC9GH28N484530 |
| 2008 | Volvo | Tractor | 4V4NC9GH88N484533 |
| 2008 | Volvo | Tractor | 4V4NC9GH98N484556 |
| 2005 | Volvo | Tractor | 4V4NC9GH05N388102 |
| 2007 | Volvo | Tractor | 4V4NC9GH17N468902 |
| 2013 | Volvo | Tractor | 4V4NC9EG8DN132086 |
| 2012 | Volvo | Tractor | 4V4NC9EH4CN547784 |
| 2012 | Volvo | Tractor | 4V4NC9EH3CN553074 |
| 2012 | Volvo | Tractor | 4V4NC9EH0CN547782 |

| 2012 | Volvo | Tractor | 4V4NC9EH0CN547801 |
|---|---|---|---|
| 2005 | Volvo | Tractor | 4V4NC9GH75N369322 |
| 2007 | Volvo | Tractor | 4V4NC9GH67N480012 |
| 2005 | Volvo | Tractor | 4V4NC9GH45N399667 |
| 2005 | Volvo | Tractor | 4V4NC9GH95N369323 |
| 2009 | Volvo | Tractor | 4V4NC9EJ99N274613 |
| 1999 | Volvo | Tractor | 4VG7DARF7XN766568 |
| 2011 | Volvo | Tractor | 4V4NC9EH5BN296742 |
| 2012 | Volvo | Tractor | 4V4MC9EH4CN550504 |
| 2012 | Volvo | Tractor | 4V4MC9EH2CN550503 |
| 2012 | Volvo | Tractor | 4V4MC9EHXCN550510 |
| 2014 | Volvo | Tractor | 4v4NC9EH4EN138171 |
| 2014 | Volvo | Tractor | 4V4NC9EH0EN148597 |
| 2014 | Volvo | Tractor | 4V4NC9EH9EN148565 |
| 2008 | Volvo | Tractor | 4V4NC9GH58N460254 |
| 2008 | Volvo | Tractor | 4V4NC9GH68N460036 |
| 2010 | Volvo | Tractor | 4V4NC9EH0AN277126 |
| 2008 | Volvo | Tractor | 4V4NC9GH28N460048 |
| 2007 | Volvo | Tractor Trk | 4V4MC9GF57N395964 |
| 2012 | Volvo | Tractor Trk | 4V4NC9EH7CN542630 |
| 2012 | Volvo | Truck | 4V4NC9EHXCN536594 |
| 2015 | Volvo | Truck | 4V4NC9EH6FN915077 |
| 2014 | Volvo | Truck | 4V4NC9EH6EN155005 |
| 2014 | Volvo | Truck | 4V4NC9EH1EN138144 |
| 2006 | Volvo | Truck | 4V4NC9GH86N425303 |
| 2011 | Volvo | Truck | 4V4NC9EJ5BN297070 |
| 2013 | Volvo | Truck | 4V4NC9EH4DN129680 |
| 2011 | Volvo | Truck | 4V4NC9EJ5BN297232 |
| 2013 | Volvo | Van | 4V4NC9EH1DN130737 |

45. On September 3, 2020, Defendant was asked about her efforts to locate the Newtek collateral:

> Q. What have you done to try to locate missing collateral?
>
> A. I don't remember. I tried to call a few shops to see if there's someone there, tried to call operational company. I couldn't do anything. Alex [Jovanovic], I couldn't reach him.

(Exhibit B at 97:24-98:5.)

46. Defendant has failed to turnover or otherwise make available to CIT certain pieces of its collateral, *to wit*: a bobcat and a forklift, as well as two tractors pledged as collateral to CIT by GTR Group, Inc.

47. On September 3, 2020, Defendant testified that she does not know the whereabouts of CIT's collateral.

48. Defendant has failed to turnover or otherwise make available to Siemens all of its collateral from within the Arrow Freight Fleet.

49. On September 3, 2020, Defendant testified that she does not know the whereabouts of Siemens' collateral.

50. On September 3, 2020, Defendant was asked generally about how so much of the Arrow Freight Fleet went missing, and testified as follows:

> Q. Well tell me this: You have a long history of in the trucking industry. You're owner of multiple trucking entities. How does 100 trucks just disappear?
>
> A. Yes. When I was going down, my company business was bad, I wasn't able to pay people so drivers were leaving trucks all over the states and it was just shops calling me about trucks, everything was messed and I had some personal issue, health issues, so everything at one point it was really hard for me, I just couldn't keep track of everything.

(Exhibit B at 133:16-134:1.)

### B. Defendant's Actual Income from Trucking Businesses

51. In the two years preceding the Petition Date, Defendant used, and allowed Nikola Zaric to use, bank accounts held in the names of Arrow Freight, Inc.; GTR Group Inc.; and Pro Star Auto Group LLC for personal expenses and other expenses unrelated to the named account holder's business.

52. In the two years preceding the Petition Date, Defendant treated Arrow Freight, Inc. as if it was her alter ego, and its accounts and assets were informally available for any use she pleased.

53. In the two years preceding the Petition Date, Defendant treated GTR Group Inc. as if it was her alter ego, and its accounts and assets were informally available for any use she pleased.

54. In the two years preceding the Petition Date, Defendant treated Pro Star Auto Group LLC as if it was her alter ego, and its accounts and assets were informally available for any use she pleased.

55. Defendant realized gross income (within the meaning of Section 61 of Title 26 of the United States Code) through her actions regarding Arrow Freight, Inc.; GTR Group Inc.; and Pro Star Auto Group LLC in 2018 and 2019 that was in excess of the gross income she reported in her federal tax returns for years 2018 and 2019, and in her SOFA.

### C. Defendant's Undisclosed Trucking Business

56. Defendant testified at her 341 Meeting that Arrow Freight, Inc.; GTR Group Inc.; and Pro Star Auto Group LLC stopped operating in 2019.

57. Upon information and belief, Defendant continued to lease trucks to operators in the year 2020.

58. Upon information and belief, Defendant continued to insure trucks under the name "ARROW FREIGHT INC" after the Petition Date.

59. Defendant failed to disclose the gross income from her truck leasing activities in her SOFA.

**IV. Defendant's Partnership with Nikola Zaric**

60. Defendant and Nikola Zaric had a relationship in Serbia before they immigrated to the United States.

61. Defendant and Zaric have been jointly involved in business ventures in the United States since as least as far back as 2009, when they began Arrow Freight, Inc. together.

62. Upon information and belief, Defendant and Zaric are involved in pending immigration proceedings regarding factual representations they made in connection with their immigration to the United States.

63. The immigration proceeding involving Defendant was pending on the Petition Date and Defendant failed to disclose it in her SOFA.

64. Upon information and belief, some facts at issue in the the immigration proceeding pertain to Defendant's relationship with Zaric.

65. Upon information and belief, Defendant and Zaric have a partnership that transcends particular business entities, and involves making coordinated, false representations to different persons and entities for personal gain.

66. Upon information and belief, Defendant and Zaric are presently coordinating to keep assets of this bankruptcy estate from the Chapter 7 Trustee, by, among other acts, making factually inaccurate representations of financial obligations owed between and among Defendant, Zaric, and others.

67. In 2018 and 2019 Zaric possessed a debit card for bank accounts maintained in the name of Arrow Freight, Inc.; GTR Group Inc.; and Pro Star Auto Group LLC, and he used the accounts for personal expenses and other exponentiators unrelated to the acknowledged activities of the accountholder entities.

68. Zaric and Defendant have made, or caused to be made, false representations of material fact to State Farm Insurance to cause the insurer to offer lower rates than it would have if Defendant and Zaric provided truthful information.

69. Defendant has failed to disclose State Farm as a creditor in her bankruptcy Schedule E/F.

70. At points subsequent to the Petition Date, Defendant has cited repayment of debts to Zaric to explain transfers totaling more than $700,000 from bank accounts subject to her control.

## V. PHMX LLC

71. Not later than July 2017, Defendant, along with Zaric, entered into a venture with Nick Kazumian and others involving the development of real property in Florida (the "Florida Real Estate Venture").

72. Beginning not later than July 5, 2017, and continuing until at least February 1, 2019, Defendant caused funds totaling more than $700,000 to be transferred to, or on behalf of, the Florida Real Estate Venture, from accounts subject to her control, including accounts held in the names of Arrow Freight, Inc. and GTR Group Inc.

73. In or around May of 2018, a limited liability company called PHMX LLC was formed for the Florida Real Estate Venture.

74. Defendant avoided becoming a member of record of PHMX LLC, and instead caused her mother, Jorgovanka Dordevic, to be a 50% member.

75. On the Petition Date, Defendant held an interest in the Florida Real Estate Venture and/ or PHMX LLC.

**VI.  Select False Testimony by Defendant at Her Rule 2004 Examinations**

76. On September 3, 2020, Defendant appeared for a Rule 2004 examination conducted by counsel for Newtek, Siemens, and CIT (hereinafter, the "September 3 Examination").

77. An oath was administered to Defendant at the outset of the September 3 Examination.

78. During the September 3 Examination, Defendant was asked about Nick Kazumian and provided the following testimony:

Q. Do you know who Nick Kazumian is? It's spelled K-A-Z-U-M-I-A-N.

A. **I don't know.**

Q. Are you saying that you don't know if you know who he is?

A. **I don't know.**

Q. I guess let me phrase it this way. Do you know him, yes or no?

A. **I heard about person. I don't know.**

Q. Okay. You've heard of him. Who did you hear of him from?

A. From Nikola Zaric.

Q. Did you hear about him having any knowledge about Newtek's missing collateral?

A. No.

Q. What did Mr. Zaric say about Mr. Kazumian?

MR. PERAICA: Objection. That's irrelevant for the purpose of this examination, what Mr. Zaric said.

MS. DOLAN: Your objection is noted. I'm going to ask your client to still answer.

MR. PERAICA: She indicated she doesn't know the gentleman, that she heard of him and that she never met him so, I mean, what else do you want her to say?

MS. DOLAN: She actually didn't say she never met him. She said she heard of him and she heard of him from Mr. Zaric and I'm asking what he said about him.

MR. PERAICA: Over my objection go ahead.

THE WITNESS: That they are business partners, they do some projects together.

BY MS. DOLAN:
Q. Is that a trucking-related business?

A. No.

Q. Do you know what the nature of the business is?

A. **Not sure. I don't know.**

(Exhibit B at 112:23-114:8) (Emphasis supplied.)

79. On September 3, 2020, Defendant knew Nick Kazumian as a result of her numerous prior interactions with him concerning, among other things, the Florida Real Estate Venture.

80. On September 3, 2020, Defendant knew Zaric's business dealings with Nick Kazumian as she herself was materially involved in those dealings, *to wit*: the Florida Real Estate Venture.

81. On February 2, 2021, Defendant appeared for a Rule 2004 examination conducted by the U.S. Trustee (the "February 2 Examination").

82. An oath was administered to Defendant at the outset of the February 2 Examination.

83. During the February 2 Examination, Defendant was asked about PHMX LLC and provided the following testimony:

Q. Do you personally have any involvement in PHMX?

A. No.

> Q. Have you ever had any involvement?
>
> A. **No.**

(Exhibit C at 29:5-9) (Emphasis supplied.)

84. Prior to February 2, 2021, Defendant was involved in the formation of the PHMX LLC entity and was a point of contact for Bryan Levy, the attorney responsible for creating the entity's operating agreement and other related documents.

85. Prior to February 2, 2021, Defendant, in coordination with Nick Kazumian and others, made transfers of funds for the benefit of PHMX LLC.

86. Prior to February 2, 2021, when PHMX LLC was facing a funding shortage in early 2020, Defendant suggested the sale of a 10% equity stake in the entity to a third party to raise funds.

**COUNT I - DEFENDANT KNOWINGLY AND FRAUDULENTLY MADE FALSE OATHS AND ACCOUNTS IN VIOLATION OF § 727(a)(4)**

87. The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 86.

88. Section 727(a)(4) of the Bankruptcy Code provides that the Court shall grant a debtor a discharge unless the debtor knowingly and fraudulently makes a false oath or account in connection with a case.

89. Defendant's sworn representations in her Schedule A/B, where she fails to disclose all of her property interests, including her interests in the Florida Real Estate Venture and/or PHMX LLC, are false.

90. Defendant's sworn representations in her Schedule E/F, where she fails to disclose all of her creditors, including State Farm Insurance, are false.

91. Defendant's sworn representations in her SOFA, where she fails to disclose her true gross income and fails to disclose the pending immigration proceeding, are false.

92. Defendant's sworn testimony at the 341 Meeting, where she represented that all of her assets and creditors were disclosed in her written bankruptcy disclosures, was false.

93. Defendant's testimony at the September 3 Examination, as quoted in paragraph 78, *supra*, was false.

94. Defendant's testimony at the February 2 Examination, as quoted in paragraph 83, *supra*, was false.

95. Based on any one or all of the foregoing, the U.S. Trustee alleges Defendant intentionally made one or more false oaths and accounts in connection with this case and is not entitled to a discharge.

WHEREFORE, the U.S. Trustee respectfully asks the Court to deny Defendant's discharge pursuant to § 727(a)(4) of the Bankruptcy Code and for such other relief as is just.

## COUNT II - DEFENDANT CONCEALED PROPERTY WITHIN ONE YEAR BEFORE THE PETITION DATE IN VIOLATION OF § 727(a)(2)(A)

96. The U.S. Trustee re-alleges and incorporates herein the allegations contained in paragraphs 1 through 95.

97. Section 727(a)(2)(A) of the Bankruptcy Code provides that the Court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has… concealed… or has permitted to be concealed – (A) property of the debtor, within one year before the date of the filing of the petition…"

98. Within one year before the commencement of the instant bankruptcy case, Defendant concealed her interests in the Florida Real Estate Venture and/or PHMX LLC through holding her interests in her mother's name. By concealing this property, Defendant hindered, delayed, and otherwise prevented her creditors from reaching the property to satisfy legitimate debts.

WHEREFORE, the U.S. Trustee respectfully asks the Court to deny Defendant's discharge pursuant to § 727(a)(2)(A) of the Bankruptcy Code and for such other relief as is just.

## COUNT III - DEFENDANT HAS CONCEALED PROPERTY AFTER THE PETITION DATE IN VIOLATION OF § 727(a)(2)(B)

99. The U.S. Trustee re-alleges and incorporates herein the allegations contained in paragraphs 1 through 98.

100. Section 727(a)(2)(B) of the Bankruptcy Code provides that the Court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has… concealed… or has permitted to be concealed – (B) property of the estate, after the date of the filing of the petition;"

101. Following the Petition Date, the Defendant has concealed the estate's interests in the Florida Real Estate Venture and/or PHMX LLC and her undisclosed truck leasing business. By concealing this property, Defendant hindered, delayed, and otherwise prevented the Chapter 7 Trustee from administering this property.

WHEREFORE, the U.S. Trustee respectfully asks the Court to deny Defendant's discharge pursuant to § 727(a)(2)(B) of the Bankruptcy Code and for such other relief as is just.

## COUNT IV - THE DEFENDANT HAS FAILED TO SATISFACTORILY EXPLAIN HER LOSS OR DEFICIENCY OF ASSETS IN VIOLATION OF § 727(a)(5)

102. The U.S. Trustee re-alleges and incorporates herein the allegations contained in paragraphs 1 through 101.

103. Section 727(a)(5) of the Bankruptcy Code provides that the Court shall grant a debtor a discharge unless the debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities.

104. Defendant has failed to satisfactorily explain the loss of Newtek's collateral within the Arrow Freight Fleet.

105. Defendant has failed to satisfactorily explain the loss of Siemens' collateral within the Arrow Freight Fleet.

106. Defendant has failed to satisfactorily explain the loss of CIT's collateral.

107. Based on the Defendant's failure to adequately explain the loss of numerous pieces of collateral, the U.S. Trustee believes and alleges the Defendant has failed to satisfactorily explain the loss or deficiency of assets to meet her liabilities.

WHEREFORE, the U.S. Trustee respectfully asks the Court to deny Defendant's discharge pursuant to § 727(a)(5) of the Bankruptcy Code and for such other relief as is just.

## COUNT V - DEFENDANT HAS FAILED TO KEEP AND PRESERVE BOOKS AND RECORDS IN VIOLATION OF § 727(a)(3)

108. The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 107.

109. Section 727(a)(3) of the Bankruptcy provides that the Court shall grant a debtor a discharge unless the debtor fails to keep or preserve books and records from which the debtor's financial condition may be ascertained.

110. Defendant has failed to keep and retain records sufficient to ascertain her actual income for the years 2018 and 2019, as the records she has produced to the U.S. Trustee, including her federal tax returns, are materially inaccurate.

111. Defendant has failed to keep and retain records sufficient to show the present whereabouts of all equipment within the Arrow Freight Fleet.

112. Based on the Defendant's failure to provide meaningful documentation or records showing her financial history and assets as of the Petition Date, the U.S. Trustee believes and alleges that Defendant has failed to keep or preserve books and records from which her true financial condition may be ascertained.

WHEREFORE, the U.S. Trustee respectfully asks the Court to deny Defendant's discharge pursuant to § 727(a)(3) of the Bankruptcy Code and for such other relief as is just.

<table>
<tr><td></td><td>RESPECTFULLY SUBMITTED:<br><br>PATRICK S. LAYNG<br>UNITED STATES TRUSTEE</td></tr>
<tr><td>DATED: <u>February 23, 2021</u></td><td>BY: <u>/s/ Jeffrey S. Snell</u><br>Jeffrey S. Snell, Trial Attorney<br>United States Department of Justice<br>Office of the United States Trustee<br>219 South Dearborn Street, Room 873<br>Chicago, Illinois 60604<br>Telephone: (312) 886-0890<br>Email: Jeffrey.Snell@usdoj.gov</td></tr>
</table>